We're back from a break. We're going to continue now with Appeal 23-1722, Tyree Neal v. United States. Ms. Schnoor, we'll begin with you. Good morning, Your Honors. May it please the Court, Mary Schnoor for Petitioner Appellant Tyree Neal, Jr. Mr. Neal pleaded guilty and was sentenced to a decade longer than the statutory maximum because of his counsel's deficient performance. Specifically, Mr. Neal's plea counsel, sentencing counsel, and appellate counsel all failed to do the basic legal work necessary to recognize that Mr. Neal had a strong argument that his prior state conviction could not count as a felony drug offense under the categorical approach. That necessary work was simply to read the statutes, including the relevant statutory definitions. If counsel had done so, it would have been obvious that the state statute was broader. Ms. Schnoor, is there a distinction here between Coleman in this case, because in Coleman, there had to be a remand for consideration of the argument, versus here, we know Ms. Christensen did consider the argument? So, starting with the last thing you said, Your Honor. Ms. Christensen did not, in fact, consider the argument that the court in Coleman said that she was required to consider, which is specifically looking at the definitions and seeing that the state definition of cocaine was broader than the federal definition of cocaine. Now, it's true... But she considered the categorical approach. Yes, she considered whether there would be a categorical approach argument here, but she concluded that no argument was available at all because she did not take the step of reading the definition provisions. Is there a distinction, though, between Coleman where that had not been done, and here we know at least the categorical approach had been considered? The categorical approach had been considered at a high level of generality, but again, the precise argument that the court said in Coleman that minimally competent counsel would have considered, which is specifically the isomer mismatch argument, that was not considered, and it's clear from the record in the evidentiary hearing that counsel did not consider that argument because of what she described as a misstep, which is that she simply did not look at the definition. So, does this turn on a level of generality? So, I believe in Coleman, the court said specifically it was that argument about the mismatch between the isomers that minimally competent counsel would have recognized, and it's clear here that counsel did not recognize that. We've got to look, though. We've got to look at what Ms. Christensen was considering, right? The two arguments that went up, that got to the per curiam opinion, the categorical approach, the isomer argument. We've got to look at everything she was considering at that point. Does the case turn, then, on the level of generality between categorical approach and isomer argument, or does it turn on the full picture of what Ms. Christensen was considering? I think it turns on whether the isomer mismatch argument that counsel conceitedly missed was clearly stronger than the arguments that she raised on appeal. So, this court has said that the way Strickland applies when you're looking at appellate counsel is whether the argument that counsel failed to make was both obvious and clearly stronger than the arguments that were made on appeal. And here, that argument was clearly stronger, even in a plain error posture. And why was it clearly stronger? So, the argument was clearly stronger because of the categorical approach being well-established and then the mismatch between the statutes being so obvious from the plain text of the statute. And then, by comparison, the arguments that counsel did raise were real long shots. So, her primary argument that she raised was that the government's proffer was insufficient to establish conspiracy as opposed to a buyer-seller relationship. But that argument was all but foreclosed by circuit precedent, which said that evidence very similar to what the government proffered would be sufficient to establish conspiracy. And so, that's namely where you have wholesale transactions, repeat transactions, and importantly, transactions that were on credit. And that was what the government proffered. And so, Mr. Neal had a very—it was a very long shot argument for appellate counsel to make. Appellate advocacy is a challenge, right? And there's this sorting function that the appellate lawyer has to do between and among these arguments. Some will be grounded in the record. Some won't. Some will be a function of plain error. Others won't. Part of what we assume is the appellate counsel is familiar with the case law and knows which is going to be stronger or weaker. That kind of a call, we have to take into account things like plain error and things like grounded in the record, right? Yes, Your Honor. It's true that counsel does have to make these choices and that also this would be a very different case if appellate counsel had actually recognized the isomer mismatch argument and had made a determination knowing exactly what the claim was, that it was weaker than the arguments she raised, but that she didn't make that comparison. And so that's an important point to note. We know she was involved in Elder, the Elder case. We know she's familiar with that type of argument. That's why I'm asking, and I apologize for being repetitive here, if it comes down to level of generality, we've got to look at the full record, right? We can't just say isomer argument versus no isomer argument. Don't we have to look at, compare and contrast all three? Yes, Your Honor. Yes, that's how this court has approached Strickland challenges to appellate counsel. And so appellate counsel here, the arguments that she raised, they were not clearly stronger than the argument that she missed. And also it's worth noting that the arguments that she raised were even arguably in the plain error posture or best case reviewable for abuse of discretion. Now turning to sentencing counsel here, this is really a straightforward application of Coleman, because it is clear from sentencing counsel's affidavit that he did not consider the isomer mismatch argument, and also that there was no good reason, unlike in Harris, for him not to have used that argument. Now the government, they argue that he focused on the challenges to the guideline enhancements, and that ultimately the government offered an agreement under which the government would limit its recommendation of a sentence to no more than 20 years. But that is simply, as we explained in our reply brief, not an equivalent outcome to the outcome he would have achieved if he had challenged the Section 851 enhancement. And moreover, sentencing counsel didn't, unlike in Harris, sentencing counsel did not have to choose between challenging the guideline enhancements and challenging the Section 851. He could have done both, and competent counsel would have done both here. Finally, turning to plea counsel, plea counsel's deficiency in failing to consider the argument may be a reason for setting aside Mr. Neal's guilty plea because of a reasonable probability that the outcome would have been different if counsel had used the argument and had correctly advised Mr. Neal. It would have changed Mr. Neal's calculus in deciding whether to plead guilty or go to trial, particularly as he did not get anything in exchange for his open guilty plea. And also, if plea counsel had recognized this argument and had used it in negotiations with the government, that would have added Mr. Neal, added leverage to Mr. Neal in his plea negotiations, so that's similar to what this court recognized in Brockmiller. But can we go back to performance for both plea counsel and sentencing counsel? Okay, you're focusing a little more on prejudice right now. If we look at the timeline of all these cases, it looks like plea counsel would have been one of the very first attorneys in our circuit to raise a Ruth-like argument at the time of his plea because he's pleading back in 2016. That's correct. August 2016. So, how are we able to say that an attorney who would be the first or one of the very first to raise a particular argument was ineffective for not raising it? So, I think that this court has already said that in Coleman, where the relevant lawyer was operating in 2014, so even two years earlier. And there, similarly, although no attorney had raised this challenge, the court still said, because the categorical approach was well established and because the comparison of the statutes, it's so obvious that the state statute is overbroad, that even in the absence of favorable precedent on point, directly on point on this issue, counsel still, minimally competent counsel would have recognized this argument. So, from your perspective, it's not even a different analysis between all three attorneys because Coleman governs all three views, all three looks. I believe, yes, Coleman directly controls plea counsel and sentencing counsel. With appellate counsel, it's slightly different because the court has had this different gloss on Strickland there, but yes, I do believe this court has already, was well aware in the Coleman case that this was not an argument that was being routinely made at the time and nonetheless concluded that it was required for minimally competent counsel. If this court has no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, Ms. Schnoor. Mr. Reed, we'll move to you now for argument on behalf of the government. Judges, and may it please the court, Peter Reed for the United States. Defense counsel's choices are not judged in the abstract. As Harris and Coleman show, context matters. I'd like to talk about two points of legal context as to the appellate counsel claim and three points of factual context as to the two trial attorneys. Starting with appellate counsel, first, Mr. Neal asks this court for doubly rare relief. There's two different standards at play when judging what appellate counsel, Ms. Christensen, was doing here. The first is the plain error standard. This court has said in Ramirez that this court will rarely grant relief on an issue of first impression under a plain error standard. Ms. Christensen testified below. She pointed this out. She said, look, I'm not going to raise an issue of first impression under a plain error standard unless I've got nothing else. Because that's what this court has directed appellate counsel to do. And the second rare circumstance, I think here, is finding ineffective assistance of appellate counsel. As Judge Brendan pointed out, the standard is very high. This court has said that it will only find ineffective assistance of appellate counsel where an argument is obvious and clearly stronger than the arguments that were actually raised by appellate counsel. And here both of these standards are layered. Was it obvious to raise an issue of first impression under plain error review? And the answer is no. Ruth itself was a plain error case, correct? Judge, Ruth itself was a plain error case. But I'd point to three things that the court had in Ruth that Ms. Christensen didn't have when she was considering this claim in 2018. The first is the decision in Elder, right? Brock Miller said that that was an issue of first impression before this court, whether the categorical approach applied to 851. Brock Miller is what she had. She saw it was an issue of first impression. And Ramirez tells her, look, you're not likely to succeed on a claim of first impression under a plain error standard. But how does that not cut against you on this point because she's counsel in Elder and preparing the Elder brief? Judge, I think that it shows an attorney who's very aware of what's going on in this court, who knows, boy, this is an argument that should be pressed in the right situation. But she didn't see it. She raised it in Elder. Her office raised it in Ruth. But to suggest that all of those things were going to happen in 2018 in one case, this panel has all been in the trenches. In the trenches, you say, okay, is this an argument I want to raise now at this time given the cards I have to play? But that's not what she said happened. Judge, what she said happened is that she looked at the statute. She didn't finish looking at the statute. Right. I think what she said is that she looked at the statute. She saw a cocaine match. That was the kind of categorical match that the court had been looking for up to that point. She acknowledges, as you say, that she didn't look through and say, hey, this says this kind of isomer and the federal statute says this kind of isomer. And I'll add, she went on and said, look, you know, it would have been obvious if I had really understood that the isomers were differently described. And, again, this is a context point to come back to what was available in Ruth that might not have been available in 2018. Not only do you have Elder, but you have De La Tour where this court had said, hey, look, if we dig into the science and see how these different isomers, whether they line up, that might create a categorical mismatch. And the third thing that the court had in Ruth that Ms. Christensen didn't have in 2018 is the record in Ruth. It was a plain error case, but it was an unusual plain error case in that the argument had been raised under the career offender guideline. And so the scientific facts had actually been briefed out. There was an affidavit in the record to show, hey, here's what a positional isomer is. So I say all that to come back to your question, which is, Ms. Christensen testified, it would have been obvious to me if I had understood, really understood, that the isomers were differently described, her words.  For me, prior to Ruth, I didn't know what a positional isomer was. I think that most people in this courtroom would say the same thing. I think Ms. Christensen was pointing to the same idea. There's a factual development or a legal development between when she was looking at this issue in 2018 and when Ruth was decided in 2020, including that factual record in Ruth that allowed the court to say, hey, this is what a positional isomer is. That wasn't available to Ms. Christensen, and she really didn't have the resources or ability to raise that on a cold record under plain error review. But your analysis here is not what the district court did. The district court didn't have Coleman. Why shouldn't we send this back to the district court to consider all of that? Judge, I think the court did have Harris, and I think that this case is most similar to Harris. And that's the second legal point that I would like to make. So as a legal matter, appellate counsel, it's a very different standard here than Coleman and Harris. It's much more differential to what appellate counsel is doing, not only because of plain error review, but also because of the obvious standard that this court applies. It must be an obvious argument. So the reason I say it's closer to Coleman than to Harris is this. Coleman says— Reverse, closer to Harris than to Coleman. I'm sorry. Thank you, Judge. Thank you very much. The reason this case is closer to Harris than to Coleman is because Harris says over and over again that this argument in 2018, same time as Christensen was looking at it, was uncertain. Some of the language that the Harris decision uses talks about being risky, being novel, being not supported by case law, being unprecedented, right? All of these adjectives that describe the strength of the argument make it clear that it wasn't obvious when Ms. Christensen was looking at this in 2018, right? So same question, Mr. Reed, for you that I had from Ms. Schnoor. Is this turned then on the level of generality? Judge, I think it can turn on the level of generality, but I think here it more obviously turns on the type of legal standard that Ms. Christensen was dealing with, right? It turns first, and I think principally, on the standard. Is it obvious to raise an issue of first impression under plain error review? And the answer is almost never, right? The reply brief suggests that this shouldn't be dispositive, but opposing counsel points to one case from the Eighth Circuit over 25 years ago that granted relief under these circumstances. And even in that case, it wasn't an issue of first impression. Is it obvious to raise an issue of first impression under plain error review? And, Judge, I think that it also turns on the level of generality, right? When you look at Bridges and the portion of Bridges that looks at Hinton, Hinton says that strategic choices made after less than a complete investigation. I think that's what we're dealing with. You have more investigation than you might have had in Coleman. What does that say about the reasonableness of Ms. Christensen's conduct? And I think it certainly shows that we're closer to Harris than we are to Coleman, right? Ms. Christensen, who knew to look for a categorical approach argument under 851, looked. She looked at the statute. She didn't notice the isomer difference. She said, even if I had noticed it, it would have been obvious, but only if I really understood whether it was differently described. As a matter of level of generality, she's gone a lot farther in investigating this issue than the attorney in Coleman or the attorney in Harris, and that's shown by the record. She's at the cutting edge of what the court was doing in Elder. She was the attorney who raised it. And I think that has to go to the reasonableness of her conduct, especially under a heightened standard for appellate review. So with my remaining time, I'd like to turn to the two trial attorneys, plea counsel and sentencing counsel. And I said I had three facts for context here. The first fact is Mr. Neal's case has always been about over five kilograms of cocaine, right? Statute under B1A, which potentially exposes a defendant to a maximum of a life sentence. However, the government, when this government charged this case back in 2014, the guideline range was under 20 years. So the offense that's charged is B1C with the statutory maximum of 20 years. But there's an important context here that both plea counsel and sentencing counsel were dealing with, which is that the government could have superseded under B1A the moment there was any challenge to the 851 enhancement, right? There are multiple ways the government could have increased the statutory maximum from 20 years. They chose one, but there is another one sitting right there. And the record shows that defense counsel was well aware of that. Second factual point of context is that Neal's post-indictment conduct was what drove his sentence, right? It moved his sentence up nine offense levels under the guidelines. This was fleeing, carjacking, threatening witnesses in 2016, threatening to get them killed, and losing acceptance at the very end, right? Nine offense levels. That's what drives his sentence up to 30 years, not the drug amount. The drug amount, as originally charged, had him under 20 years. And this matters because when you look at what trial counsel did and you look at the whole scope of what they were doing, he started under 20 years. His post-indictment conduct drove his guideline range up. And then plea counsel works to move it back down to where it was. And that's exactly— And with some success. Exactly, and with some success. In fact, right before sentencing, the government and defense counsel reached an agreed 10 to 20 years recommendation. Again, I know this is a recommendation. It's not a statutory maximum. It's different. But that's what plea counsel was doing. And you've got to look at what plea counsel was doing. It's trying to move the case back to where it was as charged before Mr. Neal's post-indictment conduct drove his guideline levels up. Now, what does this have to do with Strickland reasonableness? Well, first, as the plea counsel, he knows that when he files at 851, or when he challenges at 851, the government can supersede. He said that in his affidavit. I just don't think this is disputed. Mr. Neal himself acknowledged at the plea hearing that the government could prove beyond a reasonable doubt that there was more than 5 kilograms of cocaine involved here. In fact, it was close to 17. Counsel knew this. He had told Mr. Neal this. Everyone knew that there was more than 5 kilograms. And so a statutory maximum of 10 years was certainly in the cards up until the plea. Mr. Reed, in Harris, the contrasting argument that was being considered is a life imprisonment. Right. That's the bird in the hand, two in the bush type metaphor. Here, the contrasting argument is not as harsh. It is the two arguments that ultimately were pressed versus the categorical. The two arguments in the record, not plein air. The one argument, plein air. However, present in Ms. Christensen's mind is a result of elder. Right. How do you do the comparison contrast? Similar question that I asked Ms. Schnoor. Judge, I think that this case, at least as the plea counsel, is very similar to Harris. I recognize, as you say, that the tradeoff is not as harsh. But what you did have was a recognition by plea counsel that if what she needed to do was drive the offense, the guideline range down. Right. And that if she had challenged the 851 enhancement, the superseding indictment was waiting around the corner. Right. So for her, there's a risky argument challenging an 851 enhancement that's risky and uncertain. And, again, she didn't consider this. But objectively speaking, an objective counsel in her position, there's a risky argument. And in contrast, she knows as soon as she makes that challenge, she could face a superseding indictment that makes it all a moot point anyway. Not only by driving up the statutory maximum, but potentially stacking the 851 on top of that higher statutory maximum in a way that could increase or could create a statutory minimum. So you have a risky argument with little to gain, at least as the plea counsel. Right. Who was only on the case for six or seven months because of the way Mr. Neal kept firing attorneys over and over again. Plea counsel went out and did what Mr. Neal asked him to do. He interviewed witnesses. He pursued this career offender enhancement argument that Mr. Neal asked him to make. And before, on the verge of sentencing, he had an offer in hand. Right. Ten to 20 years. Do you want to do it or do you not? The only problem was that Mr. Neal blew it all up right before sentencing. So as to sentencing counsel, again, I think the tradeoff there is a little bit different than it looks like in Harris. But it's the same kind of analysis. Right. You have a risky argument that really kind of undermines what his plea counsel was trying to do in the case. Right. It's a little bit, because there's so many attorneys, it's hard to jam together. But it undermines what was going on in the case. There's something that looks like a plea agreement here. Right. We're going to keep it. We're going to have him plead to what was charged under B1C. And in exchange, we're not going to supersede. Right. So when it comes to plea agreement, you also have a tradeoff. Do I focus on these enhancements? Do I try to get the guideline range down? Or do I make this risky argument about an A51 enhancement? And I think we're closer to Harris than we are to Coleman on the record. And I think there's sufficient facts in the record to decide it, as it's before the court right now. Thank you very much, Mr. Reed. Ms. Schnoor, we'll move back to you now for a rebuttal argument. Thank you, Your Honor. So starting with appellate counsel, the government argued that counsel would have needed to dig into the science to recognize this argument. And that is simply not true, as the court has already recognized in Harris and Coleman. Counsel simply needed to look at the plain text of the statute. And here also appellate counsel testified that she had raised many plain error issues and that that was not necessarily a reason not to make the argument here. Next, on sentencing counsel, the government's brief acknowledges at page 42 that sentencing counsel did not have to make a choice between pursuing the guidelines enhancements and pursuing the A51 enhancement here. And government also noted the post-indictment conduct here. And I would submit that that is all the more reason to focus on the Section 851 issue, which would have decreased the statutory maximum that Mr. Neal was facing. And that with the section 851 enhancement, his sentencing exposure was 50% higher than it would have been otherwise. And so this was an argument that any reasonable counsel would have pursued. Finally, on plea counsel, so the government asserts that the government could have issued a superseding indictment. We think that on this record, it is simply not clear and an evidentiary hearing is necessary to determine sort of what exactly plea counsel had been told from the government about the possibility of a superseding indictment. And in particular, the government's evidence here was not so strong. There was certainly not physical evidence or documentary evidence of more than five kilograms. The government was relying on simply the testimony of an officer based on an in-custody interview with Mr. Neal, where there was no transcript, no signed document. And supposedly there would have been a video recording, but it was lost. So for that reason, we believe it is not clear from this record that Mr. Neal would not be entitled to relief on his claim as to plea counsel. If there are no questions, we would ask that the court vacate Mr. Neal's sentence, reverse the district court's denial of his 2255 motion and remand for further proceedings. Thank you, Ms. Schnoor. Ms. Schnoor, you're appointed counsel and you have the great thanks, both you and your firm, the great thanks of our court for having taken on the case. Also, welcome back to the court at which you clerked. I'm sure all the clerks over here on the side admire the argument of both you and Mr. Reed. Excellent advocacy, both written and oral by both sides. Thank you very much. Thank you very much. Case will be taken under advisement.